## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **PAUL REARDON**, *on behalf of himself and all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>**GOODPRESS PUBLISHING L.C. d/b/a SIMPLY THE BEST DIGITAL MARKETING** and **THOUGHTLY, LLC**,<br><br>*Defendants*. | Civil Case No.: 1:24-cv-02322-TRJ<br><br>**AMENDED COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## <u>INTRODUCTION</u>

1.     This action arises out of the marketing practices of Defendants, GoodPress Publishing, L.C. d/b/a Simply the Best Digital Marketing ("GoodPress") and Thoughtly, LLC ("Thoughtly") (GoodPress and Thoughtly, together "Defendants") that violate the Telephone Consumer Protection Act, <u>47 U.S.C. § 227</u>, *et seq.* ("TCPA").

2.     Thoughtly is a technology company that offers artificial intelligence ("AI") phone agent services to handle calls for its clients.

3.     Thoughtly provides AI agents that manage incoming and outgoing calls for sales, customer service, and marketing.

4.     Thoughtly's AI agents can schedule appointments, qualify leads, and route calls based on natural conversations.

5.     GoodPress engaged Thoughtly to place telemarketing calls on its behalf utilizing Thoughtly's AI agents to solicit GoodPress' digital marketing products and services.

6.     These calls are made to cell phones using an artificial or prerecorded voice, without the prior express consent of the consumers.

7.     These calls are made to individuals on the National Do-Not-Call Registry.

8.     The TCPA prohibits making calls to cellular telephone numbers using an artificial or prerecorded voice without prior express consent.

9.     The TCPA also prohibits making telemarketing calls to individuals who have registered their telephone numbers on the National Do-Not-Call Registry.

10.     Accordingly, Mr. Reardon brings this action on behalf of himself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

12.     This Court has jurisdiction over Defendants because Defendants conduct business transactions in this District and made calls into this District

targeting residents of this District as part of the business it conducts in this District.

13.    Defendants targeted residents of this District whose telephone numbers have an area code that is associated with this District or the State of Georgia – confirming that Defendants *knew* they were calling into this District.

14.    For example, from April 16, 2024 to May 1, 2024, Thoughtly, on behalf of GoodPress placed 10,259 calls to telephone numbers with Georgia area codes (i.e., 229, 404, 470, 478, 678, 706, 762, 770, 912).

15.    Venue is proper in this District because Defendants targeted residents of this District and called into this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## **PARTIES**

16.    Plaintiff Paul Reardon ("Mr. Reardon") is, and at all times mentioned herein was, a citizen and resident of Marietta, Georgia.

17.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18.    GoodPress is, and at all times mentioned herein was a limited liability company organized and existing under the laws of the state of Florida with a principal place of business located at 902 Clint Moore Road, Suite 202, Boca Raton, Florida 33489.

19.    GoodPress may be served via its registered agent Adam Goodkin

located at 902 Clint Moore Road, Suite 202, Boca Raton, Florida 33489.

20.    GoodPress is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21.    Thoughtly is, and at all times mentioned herein was a limited liability company organized and existing under the laws of the state of New York.

22.    Thoughtly may be served via its registered agent located at 204 Pear Tree Drive, Camillus, NY 13031.

23.    Thoughtly is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## **TCPA BACKGROUND**

24.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

25.    Relevant here, section 227(b)(1)(A)(iii) of the TCPA sets forth restrictions on the use of automated telephone equipment and prerecorded voice calls, and provides in pertinent part:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A)    to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

*****

(iii)    to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

26.    A violation of 47 U.S.C. § 227(b)(1)(A)(iii) carries statutory damages of $500 to $1,500 per call.  *See* 47 U.S.C. § 227(b)(3).

27.    The TCPA also establishes a national "do not call" database of numbers not to be called.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

28.    These "do not call" regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).

29.    Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

30.    A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

31.    A person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

32.    Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## FACTUAL ALLEGATIONS

33.    Mr. Reardon is the user of his personal cellular telephone number (XXX)-XXX-4886.

34.    Mr. Reardon's cellular telephone number (XXX)-XXX-4886 is used for residential purposes.

35.    Mr. Reardon's cellular telephone number (XXX)-XXX-4886 has been on the National Do-Not-Call Registry since December 3, 2011.

36.    On April 16, 2024, Mr. Reardon began receiving a barrage of telephone calls from Thoughtly on behalf of GoodPress.

37.    All of the calls came from telephone number (561) 948-2125.

38.    On April 16, 2024 at 2:38pm, Mr. Reardon received a call from Thoughtly on behalf of GoodPress.

39.    Mr. Reardon did not recognize the telephone number and declined the call.

40.    The call attempted to leave a voicemail message for Mr. Reardon that began, "Hey Wayne.  It's Tessa calling about Google's new lead policy for contractors.  How are you doing today?"

41.    Less than ten minutes later, at 2:47pm, Mr. Reardon received another call from Thoughtly on behalf of GoodPress.

42.    This time, Mr. Reardon answered the call and an artificial or

prerecorded voice played and stated, "Hey Wayne. It's Tessa calling about Google's new lead policy for contractors. How are you doing today?"

43. Mr. Reardon responded, "wrong number."

44. Sounds of typing played followed by the AI agent stating, "Ok. Great. Would be ok for me to transfer you over to one of our Google experts now?"

45. Mr. Reardon respond, "NO."

46. Mr. Reardon then hung up the phone.

47. At 2:57pm, Mr. Reardon received another call from Thoughtly on behalf of GoodPress.

48. When Mr. Reardon answered the call, the same artificial or prerecorded voice played that attempted to schedule a meeting with a GoodPress representative.

49. Mr. Reardon hung up the phone.

50. In an effort to reach a representative to ask that the calls stop, Mr. Reardon called the number back at 2:59pm and 3:07pm but could not get connected to a representative.

51. At 3:07pm, Mr. Reardon received another call from Thoughtly on behalf of GoodPress.

52. When Mr. Reardon answered the call, the same artificial or prerecorded voice played that attempted to schedule a meeting with a GoodPress representative.

53. This time, in an effort to be connected to someone to ask that the calls

8

stop, Mr. Reardon engaged with the artificial or prerecorded voice and scheduled a call back.

54.    Following this call, at 3:18pm, Mr. Reardon received a live call from a representative of GoodPress.

55.    The representative advised Mr. Reardon that GoodPress was attempting to reach a plumbing company (unaffiliated with Mr. Reardon) to discuss the use of its services.

56.    In an effort to identify the caller, Mr. Reardon feigned interest in GoodPress' digital marketing services and scheduled a demo appointment which would cause GoodPress to send him an email so he could attempt to verify who had called him.

57.    Despite scheduling this meeting, Mr. Reardon continued to receive calls from Thoughtly on behalf of GoodPress (at 3:29pm, 3:39pm, and 3:50pm) that played the same artificial or prerecorded voice that attempted to schedule a meeting with a GoodPress representative.

58.    At 5:09pm, Raymond "Ray" Dias, a "Managing Partner" with GoodPress emailed Mr. Reardon to schedule an online meeting with Mr. Reardon to review GoodPress' services.

59.    During the morning of April 17, 2024, Mr. Reardon received a call from a GoodPress representative using telephone number (561) 245-7956 seeking to

confirm the appointment set for later that day.

60.    Mr. Reardon advised that he was not interested in the service, cancelled the meeting, complained of the calls and requested to be placed on GoodPress' internal do-not-call list.

61.    At 9:49am, GoodPress sent a meeting cancellation notice to Mr. Reardon via email.

62.    Despite him requesting no further calls, Thoughtly on behalf of GoodPress continued to call Mr. Reardon with an artificial or prerecorded voice as set forth below:

- 10:01am from (561) 948-2125;

- 10:12am from (561) 948-2125;

- 10:22am from (561) 948-2125;

- 10:32am from (561) 948-2125;

- 10:43am from (561) 948-2125;

- 10:53am from (561) 948-2125;

- 11:04am from (561) 948-2125;

- 11:15am from (561) 948-2125;

- 11:26am from (561) 948-2125; and

- 11:37am from (561) 948-2125.

63.    When Mr. Reardon would not answer the calls, parts of the artificial or

10

prerecorded voice were left on his voicemail system.

64.    At 11:29am, Mr. Reardon emailed GoodPress and requested, again, to be placed on its internal do-not-call list.

65.    At 11:37am, Mr. Reardon called (561) 245-7956 to complain about the calls.  He again informed GoodPress he was receiving automated calls every ten minutes and demanded that the stop.

66.    Mr. Reardon did not provide prior express invitation or permission or consent for these telephone calls.

67.    To the contrary, in response to the unwanted calls, Mr. Reardon first advised Thoughtly's AI agent that it was calling the wrong number and then requested that the calls stop and to be added to GoodPress' internal do-not-call list when they did not.

68.    Defendants' violations were, at a minimum, negligent.

69.    Alternatively, Defendants' violations were willful and knowing because Defendants knew that Mr. Reardon's telephone number was registered on the National Do-Not-Call registry, and because Mr. Reardon expressly told Defendants that they were calling the wrong number and instructed them to stop calling him.

70.    Mr. Reardon and the classes were damaged by the violations alleged herein. In addition to using their cellular data, storage, and battery life, they suffered

an invasion of privacy, aggravation, annoyance, frustration, distraction, intrusion upon seclusion, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls. Their privacy was improperly invaded, Defendants' calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities, including work, family, and personal activities, to address the unwanted telephone calls. Defendants' telephone calls were annoying and a nuisance and wasted the time of Mr. Reardon and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## **DEFENDANT'S LIABILITY**

71.    Thoughtly provide AI agents to place calls on behalf of its customers, such as GoodPress.

72.    Thoughtly uses artificial voice technology to place its calls and to interact with calls rather than use a human being.

73.    Thoughtly's AI agents are designed by Thoughtly to schedule appointments, qualify leads, and route calls based on natural conversation flow.

74.    Thoughtly trains the AI agents with call recordings, unstructured text, and data from its customer's websites.

75.    GoodPress engaged Thoughtly to place calls on its behalf to certain leads.

12

76.    Mr. Reardon's telephone number was included on a lead list GoodPress obtained from Mailing Lists, Inc.

77.    Mr. Reardon's telephone number was wrongly associated with Wayne Williams of S&W Plumbing Co. on the lead list obtained from Mailing Lists, Inc.

78.    GoodPress provided Thoughtly with a list of telephone numbers to call, which included Mr. Reardon's telephone number.

79.    In total, GoodPress provided Thoughtly with approximately 22,271 telephone numbers to call.

80.    GoodPress provided Thoughtly with Mr. Reardon's telephone number.

81.    Mr. Reardon's number was incorrectly listed as belonging to "Wayne Williams" on the list provided to Thoughtly.

82.    Upon information and belief, Thoughtly created an AI agent for GoodPress.

83.    Upon information and belief, Thoughtly created a script to be used by the AI agent when calling telephone numbers provided by GoodPress.

84.    Upon information and belief, Thoughtly initiated the calls to the telephone numbers provided by GoodPress.

85.    Upon information and belief, Thoughtly provided information to GoodPress about the calls, including successful calls and information related to call backs to be conducted by GoodPress.

13

86.    Thoughtly used automated systems to make outbound telephonic marketing calls that utilized an artificial or prerecorded voice to hundreds of consumers' cellular telephones across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

87.    Thoughtly, on behalf of GoodPress, made two or more telephone solicitations to Mr. Reardon, whose cellular telephone number was on the National Do-Not-Call Registry at the time of the telephone calls.

88.    From April 16, 2024 to May 1, 2024, Thoughtly, on behalf of GoodPress, made at least 17,476 calls to 6,319 unique telephone numbers.

89.    From April 16, 2024 to May 1, 2024, Thoughtly, on behalf of GoodPress, made at least 759 calls to 452 unique cellular telephone numbers, in which the call was answered and/or a voicemail message was left.

90.    None of these calls were placed with prior express written consent or any consent from the called parties.

91.    Accordingly, for violations of 47 U.S.C. § 227(b), Mr. Reardon and the putative class is entitled to $500 per call.  *See* 47 U.S.C. § 227(b)(3).

92.    For violations of 47 C.F.R. § 64.1200(c), Mr. Reardon and the putative class is entitled to $500 per call through 47 U.S.C. § 227(c).

93.    Mr. Reardon and the putative classes are entitled to $1,500 per call if Defendants' actions are found to be knowing or willful.

94.    Defendants, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

95.    GoodPress is still liable (vicariously) for calls that violate the TCPA despite it outsourcing the calling to Thoughtly (who is directly liable).

96.    GoodPress is liable for Thouhgtly's actions because it took steps to cause the calls to be made, and because the calls were made pursuant to GoodPress' actual authority, apparent authority and/or ratification.

97.    On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one

or a few of them is unlikely to make a substantive difference for consumer privacy.

98.     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling"),* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

99.     Moreover, the *May 2013 FCC* Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call.  *Id.* at 6587 n. 107.

## CLASS ACTION ALLEGATIONS

100.    Plaintiff brings this action under Fed. R. Civ. P. 23(b)(3) on behalf of the proposed "Classes," as defined as follows:

### THE PRERECORDED CALL CLASS

Plaintiff and all persons and entities throughout the United States to whom Thoughtly, on behalf of Goodpress, placed a call, directed to a number assigned to a cellular telephone service, with an artificial or prerecorded voice, that appears on the file TH_000081 produced by Thoughtly from four years prior to the date of this class action complaint through the date of class certification.

(the "Prerecorded Call Class")

### THE DNC CLASS

Plaintiff and all persons within the United States to whose telephone number Thoughtly, on behalf of GoodPress, placed   two  or  more telemarketing calls in a 12-month period when the telephone number to

which the telephone calls were made, that appears on the file TH_000081 produced by Thoughtly, was on the National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint.

(the "DNC Class")

101.   Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

102.   The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

103.   The Defendants' records will reveal the precise number of class members.

104.   The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendants and third parties maintain written and electronically stored data showing:

     a.   The time period(s) during which Defendants or its agent(s) made the telephone calls;

     b.   The telephone numbers to which Defendants or its agent(s) made telephone calls;

    c.  The telephone numbers for which Defendants had prior express written consent;

    d.  The purposes of such telephone calls; and

    e.  The names and addresses of Class members.

105.    The Class is comprised of hundreds, if not thousands, of individuals.

106.    There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

    a.  Whether Defendants make telemarketing calls;

    b.  Whether Defendants use artificial or prerecorded voices to make their telemarketing calls to cellular telephones;

    c.  Whether Defendants obtains prior express written consent;

    d.  Whether Defendants make solicitation calls to telephone numbers registered on the National Do-Not-Call Registry;

    e.  Whether Defendants had "prior express consent" under the TCPA to call the cell phone numbers of Plaintiff and Class Members;

    f.  Whether Defendants' statutory violations were willful and knowing; and

    g.  Whether Defendants should be enjoined from engaging in such conduct in the future.

107.   Plaintiff is a member of the Classes in that Defendants placed two or more calls for telemarketing purposes, in a one-year period to his telephone number that utilized artificial or prerecorded voices, without his prior express written consent, while his telephone number was on the National Do-Not-Call Registry.

108.   Plaintiff's claims are typical of the claims of the Members of the Class in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

109.   Plaintiff and all putative Members of the Class have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendants' unwanted calls and suffered a nuisance and an invasion of their privacy.

110.   Plaintiff has no interests antagonistic to, or in conflict with, the Class.

111.   Plaintiff is an adequate representative of the Class and will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent him and the Class.  Plaintiff is prepared to participate in discovery and depositions and otherwise fulfill his obligations as a class representative.

112.   Defendants acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Class.

113.  The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

114.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

115.  Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. 227(b)
### (On Behalf of Plaintiff and the Prerecorded Call Class)

116.  Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls it placed to Mr. Reardon's cellular telephone number, for non-emergency purposes and without his consent.

117.  As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii), Mr. Reardon and the members of the class are entitled to damages in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the DNC Class)

118.  Defendants violated 47 U.S.C. §227(c) by making, or having made on its behalf, telephone solicitations to Plaintiff's and putative Class Members' telephone numbers as set forth above.

119.   Plaintiff's and putative Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

120.   Plaintiff and putative Class Members each received two or more such calls in a 12-month period.

121.   Plaintiff and putative Class Members are entitled to damages in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendants as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing his counsel as Class Counsel;

B.    An order declaring that Defendants' actions, as set out above, violate the statutes referenced herein;

C.    An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.    An award of statutory damages;

E.    An award of treble damages; and

21

F.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** February 13, 2025

/s/John A. Love_____
John A. Love, Esq.
Love Consumer Law
2500 Northwinds Parkway
Suite 330
Alpharetta, Georgia 30009
(404) 855-3600
tlove@loveconsumerlaw.com


Max S. Morgan, Esquire*
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com


(*pro hac vice)